**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA** | : | | |
| | : | | |
| **v.** | : | **Case No.** | **19-cr-00151 (GMH) (TFH)** |
| | : | | |
| **JACOB WALLACE,** | : | | |
| | : | | |
| **Defendant.** | : | | |

**GOVERNMENT'S MEMORANDUM FOR PRETRIAL DETENTION**

    The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to order the pretrial detention of defendant, Jacob Wallace, pursuant to 18 U.S.C. § 3142 (f)(1)(A), 18 U.S.C. § 3142 (f)(2)(A), and 18 U.S.C. § 3142 (d)(1)(A)(iii). In support thereof, the government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Introduction**

    Jacob Wallace is a thirty-two-year-old male with no fixed address, charged in a one-count indictment with Arson, in violation of Title 18 U.S.C. § 844(i), for intentionally igniting a gasoline fire against the exterior of the National Archives Building.  The defendant has been observed in the District of Columbia on several occasions since January 2018, but has been arrested in Indiana, Kentucky, and Mississippi during the same period of time.  The defendant is on probation, has an active non-extraditable bench warrant, and has failed to appear for several scheduled court appearances in the last year.  The defendant should be held without bond to ensure the safety of the community and his appearance in court.

**Statement of Facts and Procedural History**

    On April 25, 2019, at approximately 7:50 pm, an individual wearing brown shoes, dark

pants, a light-gray hooded sweatshirt, and a dark winter coat, carried an unidentified object up to the National Archives Building, located at 700 Pennsylvania Avenue, Northwest. (*See* Government's Exhibit A).   The individual, later identified as the defendant, placed the object against the building's stairway, ignited it, and left the scene at an accelerated pace. (*See* Government's Exhibit B).   Later investigation revealed that the object was a thick gray blanket wrapped around a gasoline can containing a flammable liquid consistent in odor with gasoline. The resulting fire was more than eight feet high and lasted nearly ten minutes, requiring responding security guards to empty two fire extinguishers on it and D.C. Fire personnel to focus a firehose on the blaze.   (*See* Government's Exhibits C, D, & E).

Initial investigation focused on several suspects, including a former Archives employee who was described as having a gait similar to the suspect.   Then, on April 28, 2019, the Central Intelligence Agency (CIA) received an email from an individual identifying himself as "jacob l wallace sr" and stating, "I'm tired of being tortured so I'm setting fires like at the National Archives building in Washington, D.C. a few days ago."   The same night, an individual identifying himself as Jacob Wallace and providing the defendant's birthdate called the Federal Bureau of Investigation (FBI) and said he wanted to speak to investigators about a fire he had set at the National Archives Building located in Washington, D.C.   The caller explained that he had set the fire to gain the attention of the FBI.

On May 2, 2019, at approximately 10:15 pm, the defendant approached the White House and told uniformed United States Secret Service officers that he was the person who had set the fire at the National Archives Building and wanted to speak to federal investigators.   At the time, he was wearing a dark blue winter coat, a dark hooded sweatshirt, dark pants, and brown leather

shoes.  Arson investigators responded to the scene and spoke to the defendant.  He told them that he had ignited a gas can on the exterior of the National Archives Building.  During a search incident to arrest, officers removed the defendant's dark winter coat and recovered cigarettes and a lighter.

The defendant agreed to a custodial interview and, during the course of the conversation, repeatedly disclaimed his prior confessions, explaining that he had read media reports about the fire and had only confessed in order to get off the streets.  He also explained that he was the individual who had sent the email to the CIA, posted video of the Archives fire to his Facebook page, and made the confessional call to the FBI in order to gain the attention of federal agents so that he would be arrested.  When asked about the clothes he was wearing, the defendant noted that he was homeless, these were his only clothes, and he had been wearing them for several days.  Investigators noted that the defendant's shoes, coat, pants, and body-type appeared to match the individual in the surveillance footage.  (*See* Government's Exhibits F & G).  The hood on the sweatshirt the defendant was wearing was significantly darker than the hood seen on the suspect in surveillance footage.  Further investigation, however, revealed that the defendant was wearing the hooded sweatshirt inside out.  Once turned around, the hood on the sweatshirt was light gray and appeared to be the same color as the one worn by the individual who set the fire.

On May 6, 2019, a grand jury returned an indictment charging the Defendant with one count of Arson, in violation of 18 U.S.C. § 844(i).  At the defendant's arraignment on May 8, 2019, the government orally moved for detention pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(A), 18 U.S.C. § 3142 (f)(2)(A), and 18 U.S.C. § 3142 (d)(1)(A)(iii) of the federal bail statute.  The Court set a detention hearing for Thursday, May 9, 2019.

## Applicable Law

The Government has requested a pretrial detention hearing under a provision of the Bail Reform Act, 18 U.S.C. § 3142(f), which provides that a judicial officer "shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community."   Under the statute, pretrial detention must be supported by clear and convincing evidence when the justification involves the safety of the community, and a preponderance of the evidence when the justification involves the risk of flight. *U.S. v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).  Furthermore, the Government may proceed by way of proffer and hearsay is permitted.  18 U.S.C. § 3142(f); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Section 3142, United States Code, imposes a rebuttable presumption of dangerousness and flight risk on certain defendants based on the crimes with which they are charged, their prior convictions, or similar considerations.  *See* 18 U.S.C. §§ 3142(e)(2), (3).  Where a defendant has been indicted for a violation of Title 18, United States Code, Section 844(i), a court must presume, subject to rebuttal, that there is no condition or combination of conditions that will reasonably assure the safety of the community.  18 U.S.C. § 3142(e)(3)(C) (establishing a rebuttable presumption for all offenses "listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed."); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  When the rebuttable presumption of Title 18, United States Code, Section 3142(e) is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory

4

presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cr. 1985).  Moreover, even after the defendant carries his burden of production, the presumption "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986).

By statute, a judicial officer must consider four factors:  1) the nature and circumstances of the offense charged, including whether the offense involves such things as a controlled substance or a firearm; 2) the weight of the evidence against the person; 3) the history and characteristics of the person; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Here, the first factor, the nature and circumstances of the offense charged, weighs in favor of detention. The defendant has been charged with a crime of violence that carries a mandatory minimum sentence of five years with a maximum period of twenty years in prison. The defendant ignited a blanket surrounding a gasoline container that had been placed next to a significant public building and, exhibiting consciousness of guilt and impending danger, fled from the scene.  The resulting blaze, which was over eight feet high and burned for nearly ten minutes despite active attempts to extinguish it, was next to Pennsylvania Avenue, a busy public thoroughfare.  Surveillance footage shows pedestrians passing by the fire and, when security guards initially deploy a fire extinguisher on the fire, it flares significantly. (*See* Government Exhibit D).  Although the defendant claimed in his confessions that his primary motivation in setting the fire was to gain the attention of law enforcement, this does not decrease the danger to first responders and passersby.

The second factor, the weight of the evidence, also weighs in favor of detention. As an

initial matter, the defendant confessed to the crime on four separate occasions in the week following the fire.  He sent an email to the CIA, included his full name, and indicated that he was setting "fires like the one at the National Archives."   The same night, he called the FBI and explained that he had set the fire at the National Archives and asked investigators to come and meet him.  Then, a few days later, he approached the Secret Service and identified himself as the individual who had set fire to the National Archives.  When arson investigators arrived on the scene, the defendant again acknowledged to them having ignited the gasoline container at the Archives the previous week.  Once he began to understand the implications of his confessions, the defendant began to disclaim his prior statements.  During the custodial interview, the defendant noted that a conviction for arson would make it more difficult for him to find employment.  Despite his later disavowal, there are reasons to credit the defendant's earlier confessions.  First, investigators had noted that the suspect's heavy clothing during the April 25 offense was in stark contrast to the weather that day, as the temperature had climbed into the mid-seventies in the late afternoon and was still warm when the fire was started.  The defendant's explanation that he had no fixed address and was wearing all of his clothing explained this.  Second, although the footage is not clear, it reveals the perpetrator's body-type, brown shoes, dark pants, a gray hooded sweatshirt, and a dark heavy coat.  (*See* Government's Exhibits A & B).  On the date of his arrest, once accounting for color change of the inside out sweatshirt, the defendant's appearance was consistent in all five of these ways.  In particular, the shape and color of the defendant's shoes are very similar to those worn by the individual in the surveillance footage.  Taken together, this visual evidence corroborates the defendant's four confessions.  Finally, even as the defendant denied that he had started the fire, he acknowledged

that voices in his head had been instructing him to burn government buildings.  Considering all of these factors, the weight of the evidence favors pretrial detention.

The third factor, the history and characteristics of the person, also weighs in favor of detention. The defendant is on probation, has an active non-extraditable warrant, and has failed to appear for at least four court hearings since March 2018.  The defendant also has no fixed address, has limited contacts with this jurisdiction, and has been arrested in three states since early 2018.  This, combined with arrests for Contempt of Court, Resisting Arrest, and Disorderly Conduct (Failure to Comply) is a strong indication that the defendant is unlikely to follow the Court's instruction.  The government therefore believes that the defendant poses a danger to the community and is a risk of flight.

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.  The defendant has acknowledged that he hears voices that tell him to set fire to government buildings.  He has no record of a prior mental health diagnosis or medication compliance.  In the instant case, he confessed multiple times, despite his later retractions, that he started a large gasoline fire against a public building on a major thoroughfare.  This is inherently dangerous behavior and the government has little confidence, based on the defendant's recent history with the criminal justice system, that any effective release conditions can be fashioned.

**Conclusion**

The Court should grant the government's motion and detain Defendant Wallace pending

trial because he poses a danger to the community.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472-845

By: _____/s/_____
ANDREW FLOYD
Assistant United States Attorney
DC Bar No. 1023315
555 4th Street, N.W.
Washington, D.C. 20001
(202) 252-6841
andrew.floyd@usdoj.gov

**CERTIFICATE OF SERVICE**

I, Andrew Floyd, certify that, on this 9th day of May, 2019, the government filed a copy

of the foregoing Memorandum in Support of Pretrial Detention by hand and served a copy on

counsel for Defendant Wallace via email.

_____/s/_____
Andrew Floyd
Assistant United States Attorney

8