## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 19-cr-151 (TFH/GMH)** |
| | ) | |
| **JACOB WALLACE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Jacob Wallace, be detained pending trial pursuant to 18 U.S.C. § 3142.  Defendant is charged by indictment with one count of arson in violation of 18 U.S.C. § 844(i).  The Court held a detention hearing on May 10, 2019, and May 22, 2019.  At the conclusion of that hearing and upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Defendant held without bond.  This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons  for the detention."  18 U.S.C. § 3142(i)(1).

### FINDINGS OF FACT

At the detention hearing, the United States proceeded by proffer based on the indictment. The defense offered no contrary evidence on the merits of the offense.  The primary contention was that Defendant, who suffers from mental illness, would be better served by voluntarily committing himself to in-patient psychiatric treatment than by being detained in jail pending trial and that, with appropriate mental health treatment, he would be neither a danger to the community nor a flight risk.  The Court makes the following findings of fact.

A.      **Evidence Relevant to the Charged Offense**

On April 25, 2019, at approximately 7:50 p.m., an individual wearing a dark winter coat, light-gray hooded sweatshirt, dark pants, and brown shoes, carried an object up to the National Archives Building on Pennsylvania Avenue in the Northwest quadrant of the District of Columbia, placed it against the stairs leading up to the building, and ignited it.  He quickly left the scene.  The resulting fire reached more than eight feet in height and burned for nearly ten minutes, finally being extinguished after security personnel emptied two fire extinguishers and the D.C. Fire Department turned a fire hose on it.  Later investigation revealed that the object was a thick blanket wrapped around a gasoline can containing gasoline.

On April 28, 2019, the CIA received an email from an individual who identified himself as "jacob l Wallace sr" and stated, "I'm tired of being tortured so I'm setting fires like at the National Archives building in Washington D.C. a few days ago."  That night, an individual identifying himself as Jacob Wallace, with a birthdate of October 26, 1986, called the FBI and stated that he had set a fire at the National Archives Building to get the attention of the FBI.  On the night of May 2, 2019, Defendant, wearing a dark winter coat, a dark hooded sweatshirt, dark pants, and brown shoes, approached the White House, reported to Secret Service officers that he had set the fire at the National Archives Building, and asked to speak to federal investigators. Defendant told the arson investigators who responded that he had ignited a gas can on the exterior of the National Archives Building.  When he was arrested, investigators found a lighter in his possession.

In a later custodial interview, Defendant admitted that he had sent the email to the CIA and made the call to the FBI, as well as stating that he had posted a video of the fire to his Facebook

page.  However, he repeatedly disclaimed his prior confessions, saying that he learned about the fire from media reports and confessed so that he could get off the streets.  He nevertheless asserted that he heard voices telling him to burn government buildings.   Investigators noted that Defendant's clothing and body type were similar to that of the individual captured in surveillance video of the fire, except that Defendant's hooded sweatshirt was a darker shade.   Further investigation revealed that Defendant was wearing a light-gray sweatshirt inside-out, with the darker side showing.

Defendant was indicted on a charge of arson on May 6, 2019.

B.     **Defendant's Criminal History**

Defendant has had a number of misdemeanor cases in the past four years.  When he was arrested on this charge, he was on supervision from a conviction for criminal trespass in Salem, Indiana.  In that case, two (non-extraditable) bench warrants have been issued, one of which is outstanding.  He was also convicted of theft in Salem, Indiana, in September 2017.  Between August 2015 and January 2019, he has been the defendant in eight cases in Kentucky, and Mississippi.  The charges range from drug possession and contempt of court (Jefferson County, Kentucky, August 2015), drug possession, tampering with evidence, and resisting arrest (Louisville, Kentucky, February 2017), to criminal trespassing and criminal mischief (Louisville, Kentucky, April and November 2017; Jefferson County, Kentucky, June 2017; Jones County, Mississippi, June 2018), to failure to appear (Louisville, Kentucky, January 2019).

**LEGAL STANDARD**

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of

conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e).  Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).  Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence."  18 U.S.C. § 3142(f)(2).  Where the justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence.  *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Section 3142 imposes a rebuttable presumption of dangerousness or flight risk on certain defendants based on the crimes with which they are charged, their prior convictions, or similar considerations.  *See* 18 U.S.C. § 3142(e)(2), (3).  For purposes of determining whether a rebuttable presumption is triggered, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Smith,* 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community.").  Section 3142(e)(3)(C) provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which

a maximum term of imprisonment of 10 years or more is prescribed.  18 U.S.C. § 3142(e)(3)(C).

Among the offenses listed in section 2332b(g)(5)(B) is a violation of 18 U.S.C. § 844.  18 U.S.C.

§ 2332b(g)(5)(B).  Here, Defendant was indicted under 18 U.S.C. §§ 844(i), an offense for which

the term of imprisonment is a minimum of five years and a maximum of 20 years.  Thus, this

offense triggers the rebuttable presumption of section 3142(e)(3)(C).

Once the rebuttable presumption is triggered, it "operate[s] *at a minimum* to impose a

burden of production on the defendant to offer some credible evidence contrary to the statutory

presumption."  *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).  As this Court

has emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak

in terms of a defendant's obligation to introduce 'evidence.'"  *United States v. Lee*, 195 F. Supp.

3d 120, 125 (D.D.C. July 1, 2016) (citations omitted).  Thus, the defendant must offer not mere

speculation, but "at least some evidence," or basis to conclude that the presumption has been

rebutted in his or her case.  *Stone*, 608 F.3d at 945–46; *Alatishe*, 768 F. 2d at 371; *see also United

States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018).  Specifically, a defendant "should 'present

all the special features of his case' that take it outside 'the congressional paradigm'" giving rise to

the presumption.  *Stone*, 608 F.3d at 946 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st

Cir. 1985)); *see also United States v. Portes,* 786 F.2d 758, 764 (7th Cir. 1985) (presumptions in

section 3142(e) "are 'rebutted' when the defendant meets a 'burden of production' by coming

forward with some evidence that he will not flee or endanger the community if released").

That said, the burden of persuasion on the issue of detention remains, as always, with the

government.  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  But even where the

defendant offers evidence to rebut the presumption, the presumption is not erased.  It is "not a

'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Taylor*, 289 F. Supp. 3d at 63 (quoting *Jessup*, 757 F.2d at 382).  Rather, even after the defendant carries his burden of production, the presumption "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *Taylor*, 289 F. Supp. 3d at 63 ("[T]he judicial officer must 'keep in mind the fact that Congress has found that' those charged with the specified offenses are likely to pose a danger to the community." (quoting *Jessup*, 757 F.2d at 384)); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011).

## ANALYSIS

### A.      Application of the Rebuttable Presumption

Defendant concedes that the rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(A) applies here, but stresses that, if he were to receive adequate mental health treatment—which is more likely to occur if he commits himself to an in-patient psychiatric treatment facility than if he is held at the D.C. Jail—he will be neither a danger to the community nor a risk of flight.

There is some appeal to Defendant's position.  It appears that his recent criminal conduct, in this case and perhaps in his other cases during the past few years, was caused by his mental illness.  He has admitted, for example, that he hears voices telling him to burn government buildings.  However, Defendant's argument is ultimately mooted by the fact that he has not been able to identify a psychiatric facility that would admit him for sustained in-patient treatment.[1]

---

[1] At the hearing, counsel for Defendant stated that she had no basis to question Defendant's competency to stand trial or to seek a competency evaluation of Defendant.

Defendant otherwise failed to produce at the hearing "some credible evidence contrary to the statutory presumption" of his dangerousness or his risk of flight were he to be released. *Alatishe*, 768 F. 2d at 371.  He has no fixed address or community connections in this area and has asserted that he is homeless.   His criminal history is troubling.   Not only has he been involved in a substantial number of criminal cases in the recent past, but he also has a history of failing to appear, as evidenced by the charge in Louisville from earlier this year and the two bench warrants that have been issued in his recent case in Salem, Indiana.   Moreover, he was on supervision in that Indiana case when he was arrested on this arson charge.   These facts do not inspire confidence that, if released pending trial, Defendant would comply with the conditions of his release, which include a requirement that he return to court as ordered.

As for dangerousness, Congress has determined that the crime with which he is charged merits substantial punishment—no less than five years and up to 20 years incarceration.   The manner in which he allegedly committed that crime also indicates that he is a danger to the community.   He lit a blanket wrapped around a gas can on fire on a busy public thoroughfare, exposing passersby as well as first responders to danger.   After it was ignited, he fled the scene, indicating consciousness of guilt.   Moreover, he has repeatedly confessed to the crime—although he now denies that he committed it—and, as noted above, has asserted that he hears voices telling him to set government buildings on fire.   The Court therefore finds that Defendant has not rebutted the presumption that there is no condition or combination of condition that would reasonably assure the safety of the community if he were to be released.

### B.   Application of the Section 3142(g) Factors

Had Defendant fully rebutted the presumption in favor of his detention, and the Court were to consider the Bail Reform Act's four section 3142(g) factors, the conclusion would ultimately

be the same:  Defendant should be held without bond pending trial.  The four factors that must be considered in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.   18 U.S.C. § 3142(g).   Further, where, as here, a rebuttable presumption applies, it "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)," even if the defendant has met his or her burden of production of offering some credible evidence to the contrary. *Dominguez*, 783 F.2d at 707; *Taylor*, 289 F. Supp. 3d at 63; *Ali*, 793 F. Supp. 2d at 391.

### 1.    *Nature and Circumstances of the Charged Offense*

The first factor, the nature and circumstances of the charged offense, favors detention.  This factor asks the Court to consider "the nature and circumstances of the offense charged."  18 U.S.C. § 3142(g)(1).   Here, the indictment and the government's proffer establish probable cause to believe Defendant committed arson in a manner that exposed the general public and first responders to serious danger.   Moreover, the offense carries a mandatory minimum term of imprisonment of five years, 18 U.S.C. § 924(c)(1)(A)(i), reflecting Congress' judgment as to the its seriousness. Therefore, the nature and circumstances of the offense weigh in favor of detention.[2]

---

[2] The government asserts that arson is a crime of violence.  However, courts have found that arson does not constitute a crime of violence, at least under 18 U.S.C. § 924(c).  *See, e.g.*, *United States v. Abu Khatallah*, 316 F. Supp. 3d 207, 216 (D.D.C. 2018) ("[A]t least two courts of appeals have held that arson statutes do not qualify as crimes of violence when defendants could be convicted under those statutes for burning their own property." (citing *United States v. Salas*, 889 F.3d 681, 683–84 (10th Cir. 2018) (federal arson statute not a crime of violence under § 924(c) ); *Jordison v. Gonzales*, 501 F.3d 1134, 1135 (9th Cir. 2007) (California property-burning statute not a crime of violence under 18 U.S.C. § 16), and *Torres v. Lynch*, __ U.S. __, __, 136 S.Ct. 1619, 1629 (2016) (agreeing, in dictum, that the "crime of violence" definition does "not reach arson in the many States defining that crime to include the destruction of one's own property"))).

8

### 2.     The Weight of the Evidence

The weight of the evidence against Defendant is relatively strong and also favors detention. Defendant's clothing and body type match the clothing and body type of the individual captured on surveillance video igniting the fire.  Defendant has repeatedly asserted that he started the fire, although he has now recanted those confessions.  He has also admitted that he hears voices telling him to burn government buildings.

### 3.     The History and Characteristics of Defendant

Section 3142(g)(3) directs the Court to consider:  (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3)(A)–(B).

Defendant is admittedly mentally ill, has no ties to this area, and boasts a robust criminal history, especially in the recent past.  The D.C. Circuit has recognized that a court may take into account a defendant's mental health when deciding whether he should be detained pending trial or released in conditions.  *See United States v. Weissberger*, 951 F.2d 392, 399 (D.C. Cir. 1991). Moreover, he was under supervision in another case when he was arrested on this charge, and he has a history of failing to appear.  For these reasons, Defendant's history and characteristics militate in favor of detention.

4.       *The Danger to the Community*

The fourth factor, the danger to the community posed by Defendant were he to be released, also weighs in favor of detention. The danger to the community posed by his alleged crime is discussed above and requires no further explanation here.  For these reasons, the Court does not have confidence that, if released, Defendant would not continue to engage in criminal activity.

The undersigned therefore finds that there is no condition or combination of conditions that would keep the community safe or assure Defendant's appearance in court if he were released pending trial.

## CONCLUSION

Based on the consideration of all the evidence, the factors set forth in section 3142(g), and all lesser restrictive alternatives to pretrial detention, the Court finds by a preponderance of the evidence that no condition or combination of conditions would assure Defendant's appearance as required and by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of any other person or of the community if Defendant was released.  Therefore, the government's motion for pretrial detention is **GRANTED**.

## DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant must be afforded reasonable opportunity for private consultation with defense counsel.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal

for the purpose of an appearance in connection with a court proceeding.


Date:  May 28, 2019                     _____
                                        G. MICHAEL HARVEY
                                        UNITED STATES MAGISTRATE JUDGE